UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | MDL No. 2262, 11 Civ. 2613 |
| THIS DOCUMENT RELATES TO: EXCHANGE-BASED PLAINTIFFS' ACTION | Master File No. 1:11-md-2262-NRB<br><br>ECF Case |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION OF MARCH 29, 2013 ORDER ON MOTION TO DISMISS

Pursuant to Local Rule 6.3 and this Court's August 23, 2013 Memorandum and Order (Dkt. No. 389) (the "Aug. 23 Order"),[1] all Defendants respectfully submit this memorandum of law in support of their Motion for Reconsideration of that portion of the Court's March 29, 2013 Memorandum and Order (the "Mar. 29 Order")[2] which denied Defendants' Motion to Dismiss Plaintiffs' Commodity Exchange Act ("CEA") claims.

### PRELIMINARY STATEMENT

On April 12, 2013, Defendants The Bank of Tokyo-Mitsubishi UFJ, Ltd., Credit Suisse Group AG, and The Norinchukin Bank moved for reconsideration of the Court's March 29 Order, arguing that Plaintiffs had failed to allege scienter because they "d[id] not allege any facts to suggest that each (or any) Movant took specific actions which exhibited an actual intent to manipulate the price of Eurodollar futures contracts or made specific communications . . . about any specific plan to cause artificial prices in that market." *See* Aug. 23 Order at *7 (internal quotation marks omitted). This Court acknowledged "serious questions regarding whether plaintiffs have adequately pleaded motive," but denied the motion for reconsideration without prejudice to

---

[1] *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262(NRB), 2013 WL 4504769 (S.D.N.Y. Aug. 23, 2013).

[2] *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262(NRB), 2013 WL 1285338, at *37 (S.D.N.Y. Mar. 29, 2013).

Defendants filing a similar motion addressing the concerns raised by the Court because certain issues regarding specific intent "ha[d] not been adequately briefed." *Id.* at *7, *9. Properly analyzed, the Court's "concern[s]" (*id.* at *9) regarding Plaintiffs' specific intent allegations warrant dismissal of the CEA claims as to all Defendants. All Defendants now move for reconsideration of the Mar. 29 Order because Plaintiffs have failed to adequately plead specific intent.

To survive dismissal, Plaintiffs must adequately allege that Defendants specifically intended to manipulate the prices of Eurodollar futures on the Chicago Mercantile Exchange ("CME"). But Plaintiffs have not done so. Their only attempt to allege that Defendants had specific intent to manipulate Eurodollar futures is merely to assert that Defendants "actively traded Eurodollar futures and options on those futures during the Class Period." First Amended Complaint ("FAC") ¶ 218.[3] Plaintiffs' conclusory assertion that Defendants were motivated to manipulate Eurodollar futures contract prices because of their market positions is precisely the sort of "generalized" profit-motive allegation that courts have repeatedly rejected as insufficient. Aug. 23 Order at *7. Moreover, Plaintiffs' theory that Defendants persistently "suppressed" LIBOR during the Class Period[4] contravenes their trading-based scienter allegations. It is implausible that nearly two dozen Defendants with a slew of different trading positions would be uniformly favored by suppressing (and never inflating) LIBOR for a nearly three-year period so as to motivate each Defendant to move CME Eurodollar prices in the same direction. There are no

---

[3] Except where noted, this memorandum of law refers to Plaintiffs' First Amended Complaint, dated April 30, 2012. In its Aug. 23 Order, the Court directed Plaintiffs to "file a second amended complaint that conforms with [the Court's] rulings." Aug. 23 Order at *23. Plaintiffs recently submitted a letter to the Court, accompanying their recently filed Second Amended Consolidated Complaint, which states that certain allegations are asserted "not to assert live claims," but instead for appellate and other purposes. *See* Pls.' Letter to Court dated Sept. 11, 2013 (Dkt. No. 404) at 1. Because it is not clear which allegations are "live" in the Second Amended Complaint, we have cited to Plaintiffs' First Amended Complaint.

[4] This is the only theory Plaintiffs are left with following rejection of their trader-based allegations in the Court's Aug. 23 Order. *See* Aug. 23 Order at *13.

specific facts pleaded that would suggest Defendants' supposed efforts to continuously suppress LIBOR were aimed at manipulating the Eurodollar futures markets.

The stringent pleading requirements of Rule 9(b) exist for good reason; they help weed out baseless claims prior to discovery.[5] Defendants' Motion for Reconsideration should be granted and the CEA claims dismissed with prejudice as to all Defendants.

## ARGUMENT

## PLAINTIFFS' CEA CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

In the Aug. 23 Order, the Court asked Defendants to address three issues.  *First*, the Court asked Defendants to consider whether "plaintiffs adequately alleged scienter," specifically (a) whether the allegation that Defendants held positions in the Eurodollar futures market is sufficient, and (b) what showing Plaintiffs must make to demonstrate that Defendants' LIBOR submissions were made with the specific intent to manipulate the price of Eurodollar futures (as opposed to other motivations unrelated to the CME Eurodollar futures market).  *Second*, the Court asked Defendants to address whether "plaintiffs' informational handicaps"—namely, their supposed inability to "identif[y] the particular contracts and transactions on which [Defendants] sought to profit"—changed the result.  *Last*, the Court asked Defendants to consider whether the specific intent arguments were "equally applicable to all defendants."  Aug. 23 Order at *20, 22-23 & n.13.

The Court's concerns were well founded, and dismissal of the CEA claims in the First Amended Complaint is warranted as to all Defendants.

---

[5] *See, e.g.*, *Wood ex rel. U.S. v. Applied Research Assocs., Inc.*, 328 F. App'x 744, 747 (2d Cir. 2009); *Segal v. Gordon*, 467 F.2d 602, 607-08 (2d Cir. 1972).

I.      **Plaintiffs Have Not Adequately Alleged Scienter**

To plead specific intent, Plaintiffs must allege "facts that give rise to a strong inference" (Mar. 29 Order at *37 (internal quotations omitted)) that each Defendant performed a manipulative act "with the purpose or conscious object of causing or effecting a price or price trend in the market" for Eurodollar futures on the CME, *In re Indiana Farm Bureau Coop. Ass'n*, No. 75-14, 1982 WL 30249, at *7 (C.F.T.C 1982). A plaintiff suing for price manipulation under the CEA must show that a defendant "acted with the purpose . . . of causing . . . a price or price trend in the [particular] market" that underlies the plaintiff's claims.[6] *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 598 (S.D.N.Y. 2011) (alteration in original) (internal quotation marks omitted). "In a case involving multiple defendants," like this one, "plaintiffs must plead circumstances providing a factual basis for scienter for *each defendant*." *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2012) (emphasis added); *accord, e.g.*, *SEC v. Lee*, 720 F. Supp. 2d 305, 321 (S.D.N.Y. 2010) (same); *Hinds Cnty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 514 (S.D.N.Y. 2009) (same).

Plaintiffs claim that the bare fact that Defendants "held positions in the Eurodollar futures market" during the Class Period raises a "strong inference" that the supposed continuous "suppression" of LIBOR during that period had the "purpose or conscious object" of affecting Eurodollar futures on the CME. This theory is, at best, "conclusory," *In re Commodity Exchange, Inc., Silver Futures and Options Trading Litig.*, No. 11 MD 2213, 2012 WL 6700236, at *10 (S.D.N.Y. Dec. 21, 2012), and, at worst, "incoherent" and self-"contradict[ory]," *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001). But in neither case

---

[6] Plaintiffs are precluded from asserting claims for manipulation of markets outside the United States by *Morrison v. National Australia Bank*, 130 S. Ct. 2869 (2010), and they do not purport to do so here. *See* FAC ¶ 1.

can it survive a motion to dismiss. *See, e.g.*, *Silver Futures*, 2012 WL 6700236, at *22 (dismissing claim); *In re Livent*, 151 F. Supp. 2d at 445.

      A.    **Plaintiffs' Allegations That Defendants Held Positions In The Eurodollar Futures Market Are Insufficient To Plead Scienter**

The operative Complaint alleges that "Defendants . . . actively traded Eurodollar futures and options on those futures during the Class Period." FAC ¶ 218. Plaintiffs premise scienter on the theory that "[D]efendants were motivated to manipulate Eurodollar futures contract prices because they held positions in the market." Aug. 23 Order at *7. But as the Court recognized in the Aug. 23 Order, the case law raises "a serious question regarding whether plaintiffs' [scienter] allegations are sufficient." Aug. 23 Order at *7. Under that authority, "it is insufficient to allege merely 'a generalized motive'"—such as the desire to turn a profit—"that could be 'imputed to any publicly-owned, for-profit endeavor.'" Aug. 23 Order at *7;[7] *see also, e.g.*, *In re Amaranth Natural Gas Commodities Litig.*, 612 F. Supp. 2d 376, 383 (S.D.N.Y. 2009) ("*Amaranth II*") ("[M]otives that are generally possessed by most corporate directors and officers do not suffice . . . .") (internal quotation marks omitted). Alleging "motive and opportunity" suffices to plead scienter only if it supports a "strong inference" of specific intent, which "generalized" motives do not. *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677 (NRB), 2007 WL 1946553, at *8 (S.D.N.Y. June 28, 2007). And yet generalized motive is all Plaintiffs have alleged here.

Plaintiffs cannot use the filing of a complaint as a "pretext for the discovery of unknown wrongs." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994). When multiple defendants must respond to allegations of fraud, plaintiffs "should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio* v. *Equidyne Extractive Indus.,*

---

[7] Quoting *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996) (citing *Kalnit v. Eichler*, 264 F.3d 131, 140-41 (2d Cir. 2001); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 813-14 (2d Cir. 1996)).

5

*Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).  Plaintiffs here, however, merely make generalized allegations against all Defendants' conduct, without specifically identifying each Defendant's role in the alleged fraud.  With no specific allegations against each Defendant, Plaintiffs' complaint is a fishing expedition, without a reasonable basis for the allegations.

Courts in this circuit routinely dismiss manipulation claims alleging merely that defendants acted "knowing" their actions could distort a market in which they held positions.  *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 539 (S.D.N.Y. 2008) ("*Amaranth I*"); *see also, e.g.*, *Silver Futures*, 2012 WL 6700236, at *10-*12 (allegations that defendant was "a large holder" of futures and acted with "knowledge" that its actions might impact the market were insufficient to plead intent) (internal quotation marks omitted); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1131 (2d Cir. 1994) ("stock ownership does not provide sufficient motive to sustain the pleading burden under Rule 9(b)").  Pleading merely that a defendant "had a large presence in" the relevant market and so "stood to gain large profits from . . . manipulating prices" asserts only a "generalized motive" that "could be imputed to any corporation with a large market presence in any commodity market," and therefore "is insufficient to show intent." *Crude Oil*, 2007 WL 1946553, at *8 (internal quotation marks omitted).  Allegations of this type "are exactly those that Rule 9(b) seeks to prevent." *Amaranth I*, 587 F. Supp. 2d at 539.[8]

Plaintiffs allege nothing more here.  Indeed, they allege even less, as there are no particularized allegations that any defendant had a "large" position in the Eurodollar futures market.  Further, Plaintiffs have not specifically alleged facts showing that each Defendant's market posi-

---

[8] Plaintiffs may argue that Rule 9(b) should be relaxed here because the relevant information is within Defendants' knowledge.  But Rule 9(b) is relaxed by allowing plaintiffs to plead on information and belief. *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).  Plaintiffs have not done so here.

tion was calculated to benefit consistently from persistent suppression of LIBOR (and never harmed by it).  Plaintiffs conclusorily allege only that "each of the Defendants actively traded Eurodollar futures and other Libor-based derivative products on a large scale" and thus stood "to make sizable profits in trading Eurodollar futures and other Libor-based derivative products" by "[m]anipulating LIBOR."  SAC ¶ 73; *see also* FAC ¶ 218; *cf. Crude Oil*, 2007 WL 1946553, at *8 (allegations that defendants "had a large presence in" the crude oil markets and thus "stood to gain large profits from their dealings in crude oil by manipulating prices of crude oil to obtain trading profits" were insufficient to plead intent).

*Silver Futures* shows that Plaintiffs' allegations do not even satisfy the "plausibility" standard of Rule 8(a).  There, the plaintiffs alleged that "[Defendant] JPMorgan, as a large holder of COMEX silver futures contracts, short puts, and options, possessed the intent to hedge its holdings and manipulate market prices downward," and the court dismissed plaintiffs' claims under Rule 8(a) on the ground that their scienter pleading was "not supported by sufficient factual allegations."  2012 WL 6700236, at *10.  The dismissed complaint "relie[d] on the percentage of short positions that Plaintiffs presume[d] JPMorgan held during the Class Period and, given this large percentage, infer[red] that Defendants must have had an intent to manipulate silver prices on the COMEX market."  *Id.*  But the complaint "d[id] not . . . include factual allegations showing that JPMorgan was anything more than 'fully aware' that 'any sudden and unexpected decline in future prices would cause option deltas to skyrocket . . . and send the sellers of far outside of the money puts scrambling to sell futures.'"  *Id.* (quoting complaint).  Plaintiffs' "conclusory and speculative allegation" of scienter was "not supported by factual allegations showing that JPMorgan took specific actions which exhibited an actual intent to bring about, engage in, or did bring about the so-called 'selling frenzy,'" and so the complaint was dismissed for failure to

state a claim.  *Id*.  The same holds here.  Indeed, Plaintiffs have not even alleged that all Defendants would benefit from LIBOR consistently moving only in one direction—down.  *Cf.* SAC ¶ 73.

Regarding the Eurodollar futures contracts at issue here, Plaintiffs allege none of the "conduct [or] contemporaneous communications" that courts require before accepting scienter allegations—even under Rule 8(a).  *Silver Futures*, 2012 WL 6700236, at *11; *see also, e.g.*, *Amaranth II*, 612 F. Supp. 2d 376, 386-89.  There are neither allegations that Defendants "took specific actions which exhibited an actual intent" to manipulate the price of Eurodollar futures contracts on the CME nor that they made "specific communications . . . about any specific plan to cause artificial prices" in that market.  *Silver Futures*, 2012 WL 6700236, at *10-*11; *see also, e.g.*, *Amaranth II*, 612 F. Supp. 2d 376, 386-89 (accepting scienter allegation against individuals supported by contemporaneous "exchange[s]," "instruction[s]," and "instant messages" between them about their manipulative trades; but dismissing claim against CEO supported only by communications showing actions "that a CEO of a hedge fund investment advisory company would normally be expected to undertake" with no allegation that the CEO "was involved in any of the alleged manipulative trades").

      **B.**      **Plaintiffs' Reputation-Based And Issuance-Based Motive Allegations Undermine Their Scienter Pleadings**

To state a valid CEA claim, Plaintiffs must plausibly allege that Defendants' actions were motivated by the specific intent to manipulate the price of Eurodollar futures contracts traded on domestic exchanges.  *See Crude Oil,* 2007 WL 1946553, at *5 (plaintiffs must plead that "defendant specifically intended to cause the artificial price").  Here, the *other* motives Plaintiffs plead—Defendants manipulated LIBOR for reasons *other* than profiting in the U.S. Eurodollar futures markets—render their scienter allegations implausible.  Plaintiffs allege that the banks—

besides their supposed motive to profit from Eurodollar futures trading—were also allegedly motivated to underreport LIBOR to (i) improve the market's perception of their financial health during the financial crisis by "understat[ing] their borrowing costs" ("reputation-based" motive allegations), FAC ¶ 46, and (ii) "pa[y] lower interest rates on LIBOR-based financial instruments they sold to investors during the Class Period," *e.g.*, during debt issuances ("issuance-based" motive allegations), FAC ¶ 47.  But each purported motive, if true, undercuts Plaintiffs' allegation that the Defendants suppressed LIBOR with a specific intent to manipulate Eurodollar futures on the CME.[9]  If anything, the persistent "suppression" theory Plaintiffs have pled "contradict[s]" their allegation that Defendants intended to profit in the U.S. Eurodollar futures markets.  *In re Livent*, 151 F. Supp. 2d at 405-06.

This Court has already declined to "accept the notion that intentionally submitting false LIBOR quotes" to advance the reputation- and issuance-based motives "is tantamount to intending to manipulate Eurodollar futures contracts."  Aug. 23 Order at *7 n.8; *see also* Mar. 29 Order at *43 n.18; Aug. 23 Order at *6 n.7.  "Rather, the best characterization of what defendants allegedly did would be that they affected Eurodollar futures prices directly by manipulating the index that was directly incorporated into the formula for those prices."  Aug. 23 Order at *3.  And even if Defendants did so "*know*[*ing*]" that their actions "might have an impact on the futures market," that "is not sufficient to state a private claim under the CEA."  *Id.* at *7 n.8 (emphasis added) (*citing In re Rough Rice Commodity Litig.*, No. 11 Civ. 618, 2012 WL 473091, at *7 (N.D. Ill. Feb. 9, 2012)).  Even "assuming [the Court] finds at least one of the non-Eurodollar-based motives to manipulate LIBOR plausible," Aug. 23 Order at *7 n.13, that mo-

---

[9] Although both Barclays and UBS admitted to instructing that LIBOR submissions be made consistent with an appearance of financial health, the admitted facts are explicit that those "directions were issued with the intent to influence [the banks'] LIBOR submissions, rather than with the intent to affect the published LIBOR fix"—let alone the prices of Eurodollar futures traded on domestic exchanges.  U-DOJS ¶ 100 n.13; *see* B-DOJS ¶ 41.

9

tive would in no way suggest that Defendants *also* "acted . . . with the purpose or conscious object of causing or effecting a price or price trend in the [U.S. Eurodollar futures] market that did not reflect the legitimate forces of supply and demand." *Indiana Farm Bureau Coop. Ass'n*, 1982 WL 30249, at *7.

If anything, Plaintiffs' reputation- and issuance-based motive allegations *undermine* their attempt to plead scienter. That is because, as Plaintiffs concede, such motives (if they existed) would cause Defendants to "continuous[ly] . . . suppress" LIBOR (SAC ¶ 457)—never inflating it—while a trading-based motive would be served only by "chang[ing] the artificial suppression and/or inflation of LIBOR from day to day" depending on the banks' trading positions, *id.* ¶ 436; *accord, e.g.*, *id.* ¶¶ 433, 444, 513.[10] And it is implausible that Defendants acted to achieve the "continuous, sustained suppression of LIBOR" (*id.* ¶ 457) while being motivated to "change the artificial suppression and/or inflation of LIBOR from day to day," *id.* ¶ 436—let alone that Defendants took parallel market positions on given days, as would have been necessary to profit from—as opposed to being harmed by—collusive "suppression and/or inflation of LIBOR" without harming one or more of them, *id.*

A court should disregard "[c]onflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent*, 151 F. Supp. 2d at 405-06; *see also, e.g.*, *Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 185 (S.D.N.Y. 2012) (concluding that a scienter theory "de-

---

[10] *See also* Declaration of David E. Kovel in Support of the Exchange-Based Plaintiffs' Motion for Reconsideration of the Court's August 23, 2013 Memorandum and Order, at ¶ 3 (asserting that Plaintiff 303030 Trading LLC sold two net futures contracts on March 20, 2006, and, on December 20, 2006, both bought and sold net futures contracts); Plaintiffs' Memorandum of Law in Support of Reconsideration, at 5 (Dkt. No. 397) (asserting that 303030 Trading was injured on these days first by a deflated Eurodollar futures market and then by an inflated Eurodollar futures market).

fied logic"); *In re GeoPharma, Inc. Sec. Litig.*, 411 F. Supp. 2d 434, 443 (S.D.N.Y. 2006) ("When evaluating motive and opportunity allegations, the Second Circuit authorizes inquiry, even at the motion to dismiss stage, as to whether plaintiffs allege a scheme that has any chance of achieving its putative ends."). Where, as here, "Plaintiffs' view of the facts defies economic reason, [it] . . . does not yield a reasonable inference of fraudulent intent." *Atl. Gypsum Co. v. Lloyds Int'l Corp.*, 753 F. Supp. 505, 514 (S.D.N.Y. 1990).

## II.     Plaintiffs' "Informational Handicaps" Do Not Change The Result

Plaintiffs' asserted inability to allege each Defendant's specific trading positions in Eurodollar futures does not lessen their burden to plausibly allege scienter. This "informational handicap" (Aug. 23 Order at *7) is *generally* present in market manipulation cases at the motion to dismiss stage, and yet courts (including this one) routinely dismiss claims like Plaintiffs' in the absence of particularized allegations without suggesting that their deficiencies are excused by an inability to specify defendants' market positions. *See, e.g.*, *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 249 (5th Cir. 2010) (concluding that the theory pled failed to adequately state specific intent without turning to a question of trading data); *Crude Oil*, 2007 WL 1946553, at *18 (dismissing the complaint as "wholly speculative and conclusory" because, among other things, plaintiffs could not point to any specific manipulation). Even if Plaintiffs might "prov[e] motive" by "show[ing] that a defendant executed a transaction that yielded a concrete benefit to it as the result of the defendant's manipulative conduct," Aug. 23 Order at *7, it does not follow that their inability to allege motive with such a showing now somehow lessens their pleading burden. Even if the burden is lessened, plaintiffs must still "present at least a minimal factual basis for their allegations of scienter. . . . [I]t is axiomatic that the complaint must allege facts demonstrating the basis for the information and belief." *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 144 (S.D.N.Y. 2010). Plaintiffs here have failed to plead any basic

facts beyond conclusory allegations that do not show their basis for their belief of Defendants' specific intent.

Plaintiffs facing the same "informational handicaps" that plaintiffs here face have met their pleading burden by alleging conduct or contemporaneous communications.  *See*, *e.g.*, *Amaranth II*, 612 F. Supp. 2d at 387-88; *In re Natural Gas Commodity Litig.*, 358 F. Supp. 2d 336, 344-45 (S.D.N.Y. 2005); *cf. Silver Futures*, 2012 WL 6700236, at *11 (dismissing claim that "include[d] no reference to specific communications between the Defendants about any specific plan to cause artificial prices or an artificial price trend").  Scienter allegations are routinely subjected to the same pleading standards applied to other elements of plaintiffs' claims, even though scienter is by definition a fact within the defendant's knowledge.  *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (applying standard pleading burden to allegation regarding defendants' "purpose" and "intent"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553-54, 564-70 (2007) (applying standard pleading burden to allegation that defendants reached "agreement").

The cases cited by this Court in its August 23 Order suggest only that Plaintiffs' burden is relaxed to the extent they are unfairly hindered in their ability to allege each Defendant's fraudulent conduct in furtherance of the manipulation—"such as time, place, and steps taken to cover the fraud," *DGM Invs., Inc. v. New York Futures Exch., Inc.*, 265 F. Supp. 2d 254, 264 (S.D.N.Y. 2003), and "the roles of the defendants," *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007.  Indeed, the Second Circuit observed in *ATSI Communications, Inc.* that a "heightened standard[] for pleading *scienter*" can be "particularly important in manipulation claims because in some cases scienter is the only factor that distinguishes legitimate trading from improper manipulation."  493 F.3d at 102 (emphasis added).

The specific intent allegations would be implausible even if bolstered with details of Defendants' trading positions because they would remain inconsistent with Defendants' alleged reputation- and issuance-based motives to "continuous[ly] . . . suppress" LIBOR. SAC ¶ 457; *see supra* Part I.B. Thus, even accounting for Plaintiffs' supposed informational handicaps, their allegations would fall short.

### III. The Deficiencies In Plaintiffs' Scienter Allegations Require Dismissal As To All Defendants

The foregoing analysis is "equally applicable to all defendants" (Aug. 23 Order at *7) because Plaintiffs make the same allegations of scienter against all of them. As the Court recognized in its August 23 Order, Plaintiffs "have explicitly alleged that each of the [Defendants that joined the previous motion for reconsideration] held or traded Eurodollar futures contracts during the Class Period". Aug. 23 Order at *6. All Defendants are now alleged generally to have been motivated by (i) the potential for profit in the Eurodollar futures markets, (ii) maintaining the appearance of financial health, and (iii) paying lower interest rates on issued LIBOR-linked instruments. SAC ¶¶ 73-78. And those allegations fall short of adequately pleading a specific intent to manipulate the prices of Eurodollar futures on the CME—as Plaintiffs are required to plead— as to all Defendants, including those that have reached regulatory settlements.[11]

### CONCLUSION

For the foregoing reasons, Plaintiffs' Commodity Exchange Act claims should be dismissed against all Defendants, with prejudice.

---

[11] Société Générale was not a party to this action prior to the filing of Plaintiffs' Second Amended Complaint. To the extent the Court deems the present motion as directed to the Second Amended Complaint, Plaintiffs' CEA claims should be dismissed with prejudice as against Société Générale for the reasons set forth herein. Société Générale joins this motion without prejudice to its right to seek leave to bring a motion to dismiss the Second Amended Complaint.

Dated: New York, New York
September 20, 2013

Respectfully Submitted,

| | |
|---|---|
| /s/ Robert F. Wise, Jr. | /s/ Daryl A. Libow |
| Robert F. Wise, Jr. | Daryl A. Libow |
| Arthur J. Burke | Christopher M. Viapiano |
| Paul S. Mishkin | SULLIVAN & CROMWELL LLP |
| DAVIS POLK & WARDWELL LLP | 1701 Pennsylvania Avenue, N.W. |
| 450 Lexington Avenue | Washington, D.C. 20006 |
| New York, New York 10017 | libowd@sullcrom.com |
| robert.wise@davispolk.com | viapianoc@sullcrom.com |
| arthur.burke@davispolk.com | Telephone: (202) 956-7500 |
| paul.mishkin@davispolk.com | Fax: (202) 956-7056 |
| Telephone: (212) 450-4000 | |
| Fax: (212) 450-4800 | *Attorneys for Defendant The Bank of Tokyo-Mitsubishi UFJ, Ltd.* |
| *Attorneys for Defendants Bank of America Corporation and Bank of America, N.A.* | |

/s/ Andrew A. Ruffino
Andrew A. Ruffino
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
aruffino@cov.com
Tel: 212.841.1000

Alan M. Wiseman
Thomas A. Isaacson
Jonathan Gimblett
1201 Pennsylvania Avenue N.W.
Washington, D.C. 20004
awiseman@cov.com
tisaacson@cov.com
jgimblett@cov.com
Tel: 202.662.6000

Michael R. Lazerwitz
CLEARY GOTTLIEB STEEN & HAMIL-
TON LLP
One Liberty Plaza
New York, New York 10006
mlazerwitz@cgsh.com
Tel: 212.225.2000

*Attorneys for Defendants Citibank, N.A. and Citigroup Inc.*

/s/ David R. Gelfand
David R. Gelfand
Sean M. Murphy
MILBANK TWEED HADLEY & McCLOY LLP
One Chase Manhattan Plaza
New York, New York 10005
dgelfand@milbank.com
smurphy@milbank.com
Telephone: (212) 530-5000

*Attorneys for Defendant Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.*

| | |
|---|---|
| /s/ Herbert S. Washer | /s/ Moses Silverman |
| Herbert S. Washer | Moses Silverman |
| Elai Katz | Andrew C. Finch |
| Joel Kurtzberg | Ankush Khardori |
| CAHILL GORDON & REINDEL LLP | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
| 80 Pine Street | |
| New York, New York 10005 | 1285 Avenue of the Americas |
| (212) 701-3000 | New York, New York 10019-6064 |
| hwasher@cahill.com | msilverman@paulweiss.com |
| ekatz@cahill.com | afinch@paulweiss.com |
| jkurtzberg@cahill.com | akhardori@paulweiss.com |
| | Telephone: (212) 373-3355 |
| *Attorneys for Defendant Credit Suisse Group AG* | *Attorneys for Defendant Deutsche Bank AG* |

16

/s/ Ed DeYoung
Ed DeYoung
Roger B. Cowie
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
Telephone: (214) 740-8614
Fax: (214) 740-8800
edeyoung@lockelord.com
rcowie@lockelord.com

Gregory T. Casamento
LOCKE LORD LLP
3 World Financial Center
New York, NY 10281
Telephone: (212) 812-8325
Fax: (212) 812-8385
gcasamento@lockelord.com

*Attorneys for Defendant HSBC Holdings plc and HSBC Bank plc*


/s/ Marc J. Gottridge
Marc J. Gottridge
Lisa J. Fried
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
marc.gottridge@hoganlovells.com
lisa.fried@hoganlovells.com
Telephone: (212) 918-3000
Fax: (212) 918-3100

*Attorneys for Defendants HBOS plc and Lloyds Banking Group*

/s/ Thomas C. Rice
Thomas C. Rice
Paul C. Gluckow
Omari L. Mason
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Fax: (212) 455-2502
trice@stblaw.com
pgluckow@stblaw.com
omason@stblaw.com

*Attorneys for Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.*

| | |
|---|---|
| /s/ Andrew W. Stern | /s/ Arthur W. Hahn |
| Andrew W. Stern | Arthur W. Hahn |
| Alan M. Unger | Christian T. Kemnitz |
| Nicholas P. Crowell | KATTEN MUCHIN ROSENMAN LLP |
| SIDLEY AUSTIN LLP | 525 West Monroe Street |
| 787 Seventh Avenue | Chicago, Illinois 60661 |
| New York, New York 10019 | arthur.hahn@kattenlaw.com |
| astern@sidley.com | christian.kemnitz@kattenlaw.com |
| aunger@sidley.com | Telephone: (312) 902-5200 |
| ncrowell@sidley.com | |
| Telephone: (212) 839-5300 | *Attorneys for Defendant Royal Bank of Canada* |
| Fax: (212) 839-5599 | |

*Attorneys for Defendant The Norinchukin Bank*

/s/ Fraser L. Hunter, Jr.
Fraser L. Hunter, Jr.
David S. Lesser
Alan E. Schoenfeld
WILMER CUTLER PICKERING
HALE AND DORR LLP
250 Greenwich Street,
New York, New York 10007
Telephone: (212) 230-8800
Fax: (212) 230-8888
fraser.hunter@wilmerhale.com
david.lesser@wilmerhale.com
alan.schoenfeld@wilmerhale.com

/s/ Robert G. Houck
Robert G. Houck
Alejandra de Urioste
James D. Miller
CLIFFORD CHANCE US LLP
31 West 52nd St.
New York, New York 10019
robert.houck@cliffordchance.com
alejandra.deurioste@cliffordchance.com
jim.miller@cliffordchance.com
Telephone: (212) 878-8000

*Attorneys for Defendant The Royal Bank of Scotland Group plc*

/s/ Steven Wolowitz
Steven Wolowitz
Henninger S. Bullock
Andrew J. Calica
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
Telephone: (212) 506-2500
Fax: (212) 262-1910
swolowitz@mayerbrown.com
hbullock@mayerbrown.com
acalica@mayerbrown.com

*Attorneys for Defendant Société Générale*

/s/ Ethan E. Litwin
Ethan E. Litwin
Christopher M. Paparella
Marc Weinstein
Morgan J. Feder
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
litwin@hugheshubbard.com
paparella@hugheshubbard.com
weinstei@hugheshubbard.com
feder@hugheshubbard.com
Telephone: (212) 837-6000

*Attorneys for Defendant Portigon AG (formerly known as WestLB AG)*

| | |
|---|---|
| /s/ Jeffrey T. Scott<br>David H. Braff<br>Yvonne S. Quinn<br>Jeffrey T. Scott<br>Matthew J. Porpora<br>SULLIVAN & CROMWELL LLP<br>125 Broad Street<br>New York, New York 10004<br>Telephone: (212) 558-4000<br>braffd@sullcrom.com<br>quinny@sullcrom.com<br>scottj@sullcrom.com<br>porporam@sullcrom.com | /s/ Peter Sullivan<br>Peter Sullivan<br>Lawrence J. Zweifach<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, New York 10166-0193<br>Telephone: (212) 351-4000<br>psullivan@gibsondunn.com<br>lzweifach@gibsondunn.com<br><br>Joel S. Sanders (*admitted pro hac vice*)<br>555 Mission Street, Suite 3000<br>San Francisco, California 94105<br>jsanders@gibsondunn.com |
| /s/ Jonathan D. Schiller<br>Jonathan D. Schiller<br>Leigh M. Nathanson<br>BOIES, SCHILLER & FLEXNER LLP<br>575 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 446-2300<br>jschiller@bsfllp.com<br>lnathanson@bsfllp.com<br><br>Michael Brille<br>5301 Wisconsin Avenue NW<br>Washington, D.C. 20015<br>Telephone: (202) 237-2727<br>mbrille@bsfllp.com<br><br>*Attorneys for Defendant Barclays PLC* | *Attorneys for Defendant UBS AG* |