UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
In re:

LIBOR-Based Financial Instruments          **MEMORANDUM AND ORDER**
Antitrust Litigation.
                                            11 MD 2262 (NRB)
This Document Applies to:
                                            11 Civ. 2613
Exchange-Based Action

------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


On September 17, 2020, the Court granted final approval

to settlements between the Exchange-Based Plaintiffs ("EBP")

and Bank of America, Barclays, Citi, Deutsche Bank, HSBC, JP

Morgan Chase, and Société Générale defendants (together, the

"Settling Defendants"), worth a combined $187 million.  (ECF

Nos. 3175-80.)[1]  This Memorandum and Order addresses EBP class

counsel's application for attorney's fees in connection with

those settlements.  (ECF No. 3144.)

**DISCUSSION**

**I.    Work by Firms Other than Class Counsel is Not Compensable**

In the fall of 2011, numerous firms applied for

appointment as interim counsel for several LIBOR classes.  In

connection with those applications, the Court issued a

---

[1]      Unless noted otherwise, all docket numbers referenced in this
Memorandum and Opinion are to the In re LIBOR-Based Financial Instruments
Antitrust Litigation, 11 MD 2262 (S.D.N.Y.) docket.

memorandum raising several concerns.   (ECF No. 32.)   One of
the issues addressed was whether appointing more than one law
firm would lead to inefficient and duplicative efforts.   (Id.
at 8 (citing Manual for Complex Litigation (Fourth) § 10.221
(2004)).)[2]

After receiving assurances from the law firms of Kirby
McInerney LLP and Lovell Stewart Halebian Jacobson LLP
(together, "EBP Class Counsel") that they had the "financial,
professional,      investigative,      international,      and
technological resources required to prosecute these claims,"
that they would be "willing and able to devote and expend the
vast    resources    necessary    to    properly    prosecute    this
litigation," and that appointment of both firms would not
"defeat    the    efficiency    purposes    of    lead    counsel

---

[2]      The potential conflict between a class and class counsel in
the context of fee applications is well recognized, especially in the
absence of a meaningful adversary process.   See In re Colgate-Palmolive
Co. ERISA Litig., 36 F. Supp. 3d 344, 349 (S.D.N.Y. 2014) (citations
omitted).   Accordingly, it falls to the Court to protect the interests of
the class, see Goldberger v. Integrated Res., Inc., 209 F.3d 43, 52 (2d
Cir. 2000) (citation omitted), by discouraging inefficient litigation by
class counsel both prospectively at the outset of the case and
retrospectively in awarding fees at the case's conclusion.

      A recent case in this District illustrates the depth of the Court's
concern in fulfilling this responsibility.   In In re Allergan PLC
Securities Litigation, Chief Judge McMahon ordered that only a single
firm could serve as class counsel, noting that it had been her experience
that "the involvement of multiple firms tends to inflate legal fees to
the detriment of the other class members."   No. 18 Civ. 12089, 2020 WL
5796763, at *4-6 (S.D.N.Y. Sept. 29, 2020).   Despite that admonition, the
firm appointed as class counsel proceeded to effectively split the work
with another law firm whose application to serve as co-lead class counsel
had been denied.   Id. at *6-7.   As a result, Judge McMahon denied lead
plaintiff's motion for class certification.   Id. *5-9.

appointments," (ECF No. 42 at 2-4, 7), the Court appointed them as interim co-lead class counsel for the EBP class. (ECF No. 66.)

Nevertheless, given the Court's desire to avoid duplicative litigation that could result from appointing more than one law firm, the Court ordered that EBP Class Counsel could only delegate work assignments to other law firms to the extent necessary "to facilitate the orderly and <u>efficient</u> prosecution of this litigation and <u>to avoid duplicative or unproductive effort</u>." (ECF No. 90 ¶ 18.f. (emphasis added).)[3]

In light of the Court's stated concerns and the scope of its order, the Court was, to say the least, surprised to learn from their fee application that EBP Class Counsel involved **<u>twelve</u>** additional law firms. (ECF No. 3146 ¶ 129.) The fees claimed by EBP Class Counsel associated with those law firms are far from merely incidental. Rather, they constitute over 18.5% of the lodestar hours claimed in the fee application (<u>see id.</u>) and account for more than half of the attorneys who

---

[3]    That qualification was intended to give EBP Class Counsel flexibility to seek outside help if, as never actually happened, extraordinary circumstances arose, such as finding counsel to assist with simultaneous triple- or quadruple-tracked depositions or hiring international counsel to advise on issues of foreign law.  It was also a safeguard in case plaintiffs had to respond to separate briefs from each of the dozen-plus defendant groups, a situation that never came to pass because of defense counsel's admirable cooperation throughout this lawsuit.

worked on the case (compare id. Exs. B-C, with id. Exs. D-O).

Moreover, after reviewing the affidavits in support of the motion for attorney's fees and given EBP Class Counsel's resources, the Court cannot divine any reason why it was necessary, efficient, or in the best interests of the class to have **twelve** additional law firms litigate this case. (See id. Exs. B-O.) If anything, the hours were claimed for work that was duplicative, unnecessary, and easily could have been performed by the two appointed firms.  This conclusion is informed by the Court's active engagement in resolving an unusual number of substantive issues, leading to the issuances of eight lengthy opinions and numerous other decisions.  It is fair to say that this litigation was heavily weighted to the resolution of legal issues before the Court rather than, for example, deposition discovery outside the Court's view.

EBP Class Counsel's decision to involve a dozen other law firms in the class representation thus exceeded the scope of their authority.  Accordingly, none of the work done by the twelve additional firms will be rewarded or credited towards any lodestar calculation.  See Torres v. Gristede's Operating Corp., 519 F. App'x 1, 4 (2d Cir. 2013) (noting "the recognized practice of percentage cuts as a practical

means of trimming fat from a fee application") (citation and quotation marks omitted).  Irrespective of our determination that EBP Class Counsel had no authority to engage a dozen additional firms, the Court concludes that the 65,000+ hours of work done on this case by EBP Class Counsel alone was more than sufficient.   Therefore, putting aside that the additional 15,000 hours of work is from firms not appointed as class counsel, those hours were not reasonably incurred and may not be tallied in the lodestar calculation.  See id.

## II.   Determining a Reasonable Fee Award

We now turn to the issue of the appropriate fee to be awarded EBP Class Counsel.  The Court assumes familiarity with the factors governing fee awards, which it addressed in a prior opinion in this multidistrict litigation concerning attorney's fees for OTC class counsel.  In re LIBOR-Based Fin. Instruments Antitrust Litig., No. 11 Civ. 5450, 2018 WL 3863445, at *3-4 (S.D.N.Y. Aug. 14, 2018) ("OTC Fee Op.").  Consistent therewith, the Court will utilize the percentage-of-fund method and then cross-check that baseline fee award against the lodestar calculation.  Id.

### A.   The Percentage-of-Fund Analysis

To determine an appropriate percentage fee award, the Court will evaluate: (1) historical fee award data published in empirical studies; (2) fee award trends from the cases in

this District cited by EBP Class Counsel; and (3) fees awarded by this Court in other LIBOR class action settlements.  As noted in the OTC Fee Opinion, the percentage award should reflect a sliding scale in which the portion of the settlement fund awarded as fees decreases as the size of the fund grows. Id. at *3 (citing Colgate-Palmolive, 36 F. Supp. 3d at 348).

### 1.   Empirical Studies of Historical Fee Award Data

As a starting point for calibrating an appropriate sliding scale, "[h]istorical data of fees awarded in common fund cases provides an unbiased and useful reference for comparing fees cases of similar magnitude . . . ." Colgate-Palmolive, 36 F. Supp. 3d at 349.

One empirical study of 458 class actions between 2009 and 2013, often cited in this District, notes that the average fee award for settlement funds over $67.5 million was 22.3%:

FIGURE 5. FEE PERCENTAGE, BY CLASS RECOVERY AMOUNT
(DECILE RANGES), 2009–2013



*Class recovery ranges are as follows. First decile: less than $400,000; second decile: $400,000–$750,000; third decile: $750,000–$1.4 million; fourth decile: $1.4–$2.65 million; fifth decile: $2.65–$3.9 million; sixth decile: $3.9–$6.5 million; seventh decile: $6.5–$12 million; eighth decile: $12–$23.4 million; ninth decile: $23.5–$67.5 million; tenth decile: greater than $67.5 million.*

Theodore Eisenberg, Geoffrey P. Miller, & Roy Germano, Attorneys' Fees in Class Actions: 2009–2013, 92 N.Y.U. L. Rev. 937, 948 & fig. 5 (2017).

A second widely cited study of fee awards in 688 class actions in 2006 and 2007 observed that for settlement funds between $100 million and $250 million, the average award was 17.9% and the median award was 16.9%. Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7 J. Empirical Legal Stud. 811, 839 & tbl. 11 (2010).

And a third empirical study published in a leading treatise on class actions found that the average fee award for settlement funds studied by the author between $100 million and $250 million was approximately 17%, as reflected on the chart below (which also incorporates the data from the Fitzpatrick study discussed immediately above):



5 William B. Rubenstein, <u>Newberg on Class Actions</u> § 15:81 & graph 2 (5th ed.) (Westlaw 2020).

### 2.   Fee Award Trends from Cases Cited by EBP Class Counsel in this District

While "the sheer volume of federal court class action settlements means that [an] isolated string cite[] to cases in which class counsel received a higher percentage of the settlement [is] not particularly meaningful," <u>Alaska Elec.</u>

Pension Fund v. Bank of Am. Corp., No. 14 Civ. 7126, 2018 WL 6250657, at *3 (S.D.N.Y. Nov. 29, 2018) (citation omitted), the cases cited in EBP Class Counsel's brief provide another set of datapoints. (See ECF No. 3145 at 4 n.8, 10-11 & n.11; ECF No. 3146-17 at Ex. Q.) The cases EBP Class Counsel cite from this District for settlement funds over $50 million, excluding one outlier case, form the following sliding scale:[4]



**Fees Awarded in SDNY Cases Cited by EBP Class Counsel (Excl. Outlier)**

---

    [4]    See Christine Asia Co. v. Yun Ma, No. 15 MD 2631, 2019 WL 5257534, at *17 (S.D.N.Y. Oct. 16, 2019), appeal withdrawn sub nom. Tan Chao v. William, No. 19-3823, 2020 WL 763277 (2d Cir. Jan. 2, 2020); In re Mun. Derivatives Antitrust Litig., No. 08 Civ. 02516, 2016 WL 11543257, at *1 (S.D.N.Y. July 8, 2016); In re Beacon Assoc. Litig., No. 09 Civ. 3907, 2013 WL 2450960, at *5, *14 (S.D.N.Y. May 9, 2013); Velez v. Novartis Pharm. Corp., No. 04 Civ. 09194, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010); Order, In re Nat. Gas Commodity Litig., No. 03 Civ. 6186 (S.D.N.Y. May 24, 2006), ECF No. 445; In re Deutsche Telekom AG Sec. Litig., No. 00 Civ. 9475, 2005 WL 7984326, at *4 (S.D.N.Y. June 9, 2005); Kurzweil v. Philip Morris Companies, Inc., No. 94 Civ. 2373, 1999 WL 1076105, at *3 (S.D.N.Y. Nov. 30, 1999); In re Sumitomo Copper Litig., 74 F. Supp. 2d 393, 400 (S.D.N.Y. 1999).

The one notable outlier is In re Initial Public Offering Securities Litigation in which the court awarded one-third of a $586 million settlement fund. 671 F. Supp. 2d 467, 471 (S.D.N.Y. 2009). That award

### 3.   Other LIBOR Class Fee Awards

The most immediate benchmarks for determining an appropriate fee award for EBP Class Counsel are the fees the Court has already approved as reasonable in other LIBOR class actions.

In the OTC action, the Court awarded $43,478,572 from a $250,000,000 settlement fund and $62,788,212 from a $340,000,000 settlement fund. These awards translate to 18.49% and 18.50% of the remainder of the funds after deducting expenses, respectively. OTC Fee Op., 2018 WL 3863445, at *5; ECF No. 2745.

In the Lender action, the Court awarded $8,680,000 from a $31,000,000 settlement fund and $1,120,000 from a $4,000,000 settlement fund. These awards are the equivalent to 29.38% and 28.08% of the remainder of the respective funds after deducting expenses. (ECF Nos. 2777, 3097.)

And, in the Non-Defendant OTC action, the Court recently awarded class counsel $6,097,000 from a $21,775,000 settlement fund, which represents 28.06% of the fund's remainder after deducting expenses. (ECF No. 3185.)

---

appears to reflect the exceptional circumstances of that case where class counsel expended over 677,000 hours of work prosecuting over 300 different actions and the court's award still resulted in a negative lodestar multiplier. See id. at 515. The circumstances here are not analogous.

The sliding scale below reflects these awards:



4.   **A Baseline Percentage Fee Award Range of 17% to 25% is Reasonable**

Based on the above data, the 30% fee award EBP Class Counsel request is unreasonably high.  An award of that size well exceeds the sliding scales formed by the empirical studies and the cases from this District cited by EBP Class Counsel.  It also would represent the largest percentage of a fund awarded in the LIBOR litigation despite that the EBP settlement fund is several times larger than the Lender and Non-Defendant OTC settlements.

The trendlines established by these sources instead suggest that a reasonable fee for EBP Class Counsel would fall somewhere between approximately 17% and 25% of the settlement fund.

**B.   Other _Goldberger_ Factors Weigh in Favor of a 25% Award**

The baseline fee range of 17%-25% of the fund accounts for two of the so-called _Goldberger_ factors governing fee awards in the Second Circuit: (1) the "magnitude and complexities of the litigation"; and (2) the "fee in relation to the settlement."  209 F.3d at 50; _see Colgate-Palmolive_, 36 F. Supp. 3d at 348.

The Court may adjust the baseline percentage fee based on the following _Goldberger_ factors:  (1) the "risk of the litigation"; (2) the "quality of representation"; and (3) "public policy considerations."  209 F.3d at 50; _see Colgate-Palmolive_, 36 F. Supp. 3d at 351-53.  While "courts have traditionally awarded fees . . . in the lower range of what is reasonable" to avoid "windfalls," _Wal-Mart Stores, Inc. v. Visa U.S.A., Inc._, 396 F.3d 96, 122-23 (2d Cir. 2005) (citation omitted), an award of 25% of the fund after deducting for expenses is appropriate here in light of these other _Goldberger_ factors.  _See, e.g._, _Alaska Elec._, 2018 WL 6250657, at *3.  Based on the $181,386,421.14 settlement fund remaining after deducting $5,613,578.86 in expenses, a 25% award would be $45,346,605.29.

No further adjustment to that baseline percentage award is warranted under the circumstances of this case.  _See_

—12—

Colgate–Palmolive, 36 F. Supp. 3d at 351 (If a case was "demonstrably exceptional in any of these areas, then an increase or decrease of the baseline percentage would be warranted.").

### C.   Lodestar Cross-Check

The last step in the Court's analysis is to cross check the 25% award against a lodestar calculation of EBP Class Counsel's fees, which satisfies the final Goldberger factor: the time and effort contributed by counsel.  209 F.3d at 50; see Colgate–Palmolive, 36 F. Supp. 3d at 353.  To calculate fees under the lodestar method, the Court multiplies the reasonable hours billed by a reasonable hourly rate. Goldberger, 209 F.3d at 47 (citation omitted).

As discussed above, the Court will not credit the hours represented by work done by non-EBP Class Counsel towards the lodestar calculation.  Alone, EBP Class Counsel's hours total 65,787.36.  (See ECF No. 3146 ¶ 129.)  That is over 10,000 hours more than what OTC class counsel claimed in support of their fee application for a case of similar magnitude, (compare id., with ECF No. 2706 ¶¶ 48–50), and is also the rough equivalent to a four-person law firm working on this case full-time for nine years billing 40 hours-per-week, 48 weeks-per-year.  While the sheer quantum of hours suggests

some amount of over-litigation, the Court will credit EBP Class Counsel the full amount of time they claim.

EBP Class Counsel's hourly rates, which produce blended rates of roughly $860 for partners, $470 for associates, and $230 for paralegals, are not out of line with the amounts sought and approved in other cases in this District.[5] (See ECF No. 3146 Exs. B, C.) For purposes of the lodestar cross-check, the Court will thus apply the full rates claimed by EBP Class Counsel.

Fully credited, EBP Class Counsel's lodestar is $42,463,194.85. (Id. ¶ 129.) When compared to the 25% baseline fee award of $45,346,605.29, the cross-check results in a lodestar multiplier of 1.07. This cross-check confirms that the 25% award is reasonable.

## CONCLUSION

EBP Class Counsel's motion for attorney's fees is granted in part and denied in part. The Court awards EBP Class Counsel $45,346,605.29 in attorney's fees, equal to 25% of the remainder of the $187,000,000 settlement fund after deducting $5,613,578.86 in expenses. The fee award shall be paid pro rata across the settlement funds created by the

---

[5]     In a recent opinion, Judge Failla surveyed fee decisions in this District and approved of reasonable hourly rates of up to $900 for experienced partners, up to $425 for senior associates, and up to $200 for paralegals. Carrington v. Graden, No. 18 Civ. 4609, 2020 WL 5758916, at *12–15 (S.D.N.Y. Sept. 28, 2020) (listing cases).

settlements between Exchange-Based Plaintiffs and Settling Defendants.  That fee shall be paid to EBP Class Counsel pursuant to the terms, conditions, and obligations of the settlement agreements.  Consistent with Pretrial Order No. 1, EBP Class Counsel may distribute those fees to other counsel in their discretion.  (ECF No. 90 ¶ 18.j.)

As stated at the Fairness Hearing, the Court also approves the Exchange-Based Plaintiffs' request for $5,613,578.86 in litigation costs and expenses and for $25,000 service awards for each of the six named plaintiffs. The expenses and service awards shall be paid be pro rata across the settlement funds created by the settlements between Exchange-Based Plaintiffs and the Settling Defendants.

The Clerk of Court is respectfully directed to terminate the motions currently pending at ECF No. 3144 in Case No. 11 MD 2262 and ECF No. 787 in Case No. 11 Civ. 2613.

**SO ORDERED.**

Dated:     New York, New York
           November 24, 2020

_____
    NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE